No. 06-15-00129-CR


IN THE COURT OF APPEALS FOR THE
SIXTH JUDICIAL DISTRICT OF TEXAS

---

James Barcard Cunningham, Appellant

v.

State of Texas, Appellee

---

## Anders Brief in support of
## Motion to Withdraw


On appeal from judgment
in cause number 14-04342-CRF-85
In the 85th District Court for
Brazos County, Texas
Hon. Kyle Hawthorne, Presiding

Clint F. Sare
Texas Bar No. 788354
P.O. Box 1694
Bryan, Texas 77806
(979) 822-1505
Counsel for appellant

## IDENTITY OF PARTIES AND COUNSEL

Appellant:                          James Barcard Cunningham

   Trial Counsel:          Jerry Gribble
                               PO Box 3302
                               Bryan, TX 77805

   Appellate Counsel:Clint F. Sare
                               P.O. Box 1694
                               Bryan, TX  77806

Appellee:                           State of Texas

   Counsel:                 Douglas Howell, III
                               300 E. 26th Street Ste. 310
                               Bryan, TX  77803

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................. ii

Table of Contents ..................................................................................................... iii

Index of Authorities ................................................................................................. iv

Statement of the Case ................................................................................................ 1

Anders Statement ...................................................................................................... 1

Potential Issues Presented ......................................................................................... 2

Statement of Facts ..................................................................................................... 2

Summary of the Argument ........................................................................................ 9

Argument ................................................................................................................... 9

    Potential Issue 1: Was the evidence legally sufficient to support Appellant's

    conviction? ........................................................................................................... 9

    Potential Issue 2: Did the trial court err in overruling Appellant's objection to

    evidence of extraneous offenses? ...................................................................... 13

    Potential Issue 3: Did the trial court err in permitting hearsay statements of a

    codefendant who was not subject to cross-examination? .................................. 16

    Potential Issue 4: Is Appellant entitled to a new trial due to juror misconduct?

    .............................................................................................................................. 17

Prayer for Relief ...................................................................................................... 18

Certificate of Compliance ....................................................................................... 19

with Brief limitations and Service .......................................................................... 19

# INDEX OF AUTHORITIES

**Cases**

*Evans v. State*, 202 S.W.3d 158 (Tex.Crim.App. 2006) ........................................ 10

*Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App. 1969). .................................... 1

*Huffman v. State*, 267 S.W.3d 902 (Tex.Crim.App. 2008 .................................... 10

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);...... 9, 11

*Jones v. State*, 944 S.W.2d 642  (Tex.Crim.App. 1996) ........................................ 10

*King v. State*, 953 S.W.2d 266 (Tex.Crim.App. 1997) ........................... 5, 7, 12, 15

*Laster v. State*, 275 S.W.3d 512 (Tex.Crim.App. 2009) ....................................... 11

*Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997) ....................................... 11

*Matchett v. State*, 941 S.W.2d 922 (Tex.Crim.App. 1996) ................................... 10

*McCray v. State*, 861 S.W.2d 405 (Tex.App.--Dallas 1993, no pet.) .................... 10

*Moff v. State*, 131 S.W.3d 485 (Tex.Crim.App. 2004). ................................... 10, 13

*Ngo v. State*, 175 S.W.3d 738 (Tex.Crim.App. 2005) ..................................... 10, 14

*Parrish v. State*, 38 S.W.3d 831 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)
........................................................................................................................... 18

*Salazar v. State*, 562 S.W.2d 480 (Tex.Crim.App. 1978) .................................... 17

*Sharp v. State*, 707 S.W.2d 611 (Tex.Crim.App. 1986) ....................................... 10

*Trout v. State*, 702 S.W.2d 618 (Tex.Crim.App. 1985) ........................................ 18

*United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977) ......................................... 10

*Uranga v. State*, 247 S.W.3d 375 (Tex. App.--Texarkana 2008) .......................... 17

*Williamson v. State*, 244 S.W.2d 202 (Tex.Crim.App. 1951) ............................... 11

**Statutes**

Tex. Pen. Code § 46.04 ........................................................................ 11

**Rules**

Tex. R. App. P. 33.1 ........................................................................... 16

Tex. R. App. P. 44.1 ........................................................................... 18

Tex. R. App. P. 9.4 ............................................................................. 19

Tex.R.App.P. 21.3 .............................................................................. 17

**Constitutional Provisions**

Tex. Const. art. V § 13 ...................................................................... 10

## STATEMENT OF THE CASE

Appellant brings this appeal from a conviction for the third degree felony offense of Unlawful Possession of a Firearm. He was found guilty by a jury and the punishment, enhanced by two prior convictions, was assessed by the trial court at twenty years confinement.

## ANDERS STATEMENT

After a thorough review of the record the undersigned counsel has determined there are no meritorious issues which would support reversal or modification of the trial court's judgment. This brief is presented in support of counsel's motion to withdraw under the procedures outlined in *Anders v. California*, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); and *Gainous v. State*, 436 S.W.2d 137 (Tex.Crim.App. 1969). In accordance with those procedures, this brief discusses the evidence presented at trial, objections to that evidence, potential issues for appeal and why those issues do not support an appeal. Appellant has been provided with a copy of this brief and informed of his right to file a response, to review the record in preparing any response, and the right to file a petition for discretionary review if the conviction is affirmed.

## POTENTIAL ISSUES PRESENTED

Potential Issue 1:  Was the evidence legally sufficient to support Appellant's conviction?

Potential Issue 2:  Did the trial court err in overruling Appellant's objection to evidence of extraneous offenses?

Potential Issue 3:  Did the trial court err in permitting hearsay statements of a codefendant who was not subject to cross-examination?

Potential Issue 4:  Is Appellant entitled to a new trial due to juror misconduct?


## STATEMENT OF FACTS

The events giving rise to this prosecution occurred June 23, 2014. That day Monica Peugh was working as a cashier at a convenience store in Bryan.  (4 RR 57).  She saw Appellant, who she knew as a regular customer, with his girlfriend and "three or four" other people she did not recognize.  (4 RR 60-61).  She later testified to hearing Appellant say to someone on the phone, "we're going to take care of this right now" before the group left the store.  (4 RR 61, 63).

A security video from the convenience store showing Appellant and others get into a tan 4-door car identified as belonging to Appellant. (4 RR 63-66, Ex. 46).  It showed the car going down LaBrisa Street in the direction of Gato Street.  Gato Street is short residential street which is a cul-de-sac.

(4 RR 42).  Residents of that street include Sheryl Wilson, Katrina Rush, and David Johnson.

That day Wilson had set up a small swimming pool for the children to play in.  (4 RR 34).  She saw two boys go up to her neighbor David Johnson and tell him "they're on their way."  She knew there had been a fight the day before involving Johnson and she took her daughter to another neighbor's house.  (4 RR 35).

David Johnson lived with Katrina Rush on Gato.  (4 RR 71).  Johnson knew Appellant and they were friends at one time.  Over Appellant's objection he was allowed to make reference to a dispute that arose from a drug sale to Appellant.  (4 RR 74-77).  He testified he had a fistfight with Appellant on June 22nd over that sale.  On the 23rd, the two argued again on the telephone and, according to Johnson, Appellant said he was coming back to Johnson's house.  (4 RR 75).

Johnson saw Appellant's car and had already gotten a shotgun "ready."  (4 RR 78).  His trial testimony was not consistent on whether he told his daughter to get in the house or she was still in the yard.  (4 RR 78, 80, 85). Consistent with Wilson's statement, two boys from the neighborhood who had been at the convenience store came and told Johnson about Appellant.  (4 RR 77).  He soon saw Appellant's car, which he

3

described as a brown Buick, and grabbed the shotgun. (4 RR 78). At trial Johnson testified Appellant put a gun outside the front passenger side window and fired two times. (4 RR 78, 80, 87-88). Johnson fired back at the car with his shotgun a total of five times. (4 RR 79). That caused Appellant's car to crash into another car. (*Id.*) In his version of events, the driver "kept trying to punch the gas" and left marks on the road.[1] (*Id.*)

Johnson claimed he went up to the car and, after getting Appellant to drop his gun (or guns[2]), three occupants ran away. (4 RR 82). In addition to Appellant, Johnson identified the driver as "K-Mo" (4 RR 89) and the rear seat passenger as David Edwards. (4 RR 91). Johnson testified Appellant did *not* have a gun when he ran away (4 RR 90), and that he was not wearing a shirt. (4 RR 93). At the time he told an investigating officer Appellant was wearing black pants, at trial he initially testified Appellant was wearing shorts. (4 RR 93, 103).

Johnson's girlfriend Katrina Rush, also identified Appellant as being in the front passenger seat and firing a handgun. (4 RR 116). She said the daughter was out in the yard. (4 RR 117, 119). In her version of events,

---

[1] This testimony was controverted at trial by the investigating officer who determined the tire marks were not lined up with the car's tires. (4 RR 177).
[2] (4 RR 89).

4

Appellant was wearing a white shirt and black pants (4 RR 128) and holding a black and silver gun. (4 RR 133).

Another witness, Dashon King, was the owner of the car which was hit by Appellant's car after the shooting. He saw three people get out of the car and run. (4 RR 146). He also recognized Appellant and said he came out of the *rear* passenger window. (4 RR 146, 150, 153). Unlike Johnson's version, where Appellant dropped the gun, King testified Appellant ran off with the gun. (4 RR 149).

Erin Horan did not live on Gato Street but on the second floor of an apartment building on a nearby street. She heard the shots and went to the window to look. (4 RR 49). She called 911 and described seeing a man in a white t-shirt and jeans and a second man with a white shirt and black pants carrying a silver handgun. (4 RR 52; 5 RR 9). She did not identify Appellant at trial and admitted she would not be able to identify the person she saw. (4 RR 53).

Another witness Barbara Ortiz said she saw a man wearing a white t-shirt and black pants and carrying a gun in his right hand ran away from the area and got in a car. (4 RR 217). She did not identify Appellant.

Appellant was indicted on September 4, 2014. (CR 5). The State alleged Appellant had been convicted of a felony in 2010 and, on June 23,

2014, a date less than five years from his release following that conviction, possessed a firearm. (CR 5). It contained an enhancement paragraph alleging a prior conviction of possession of a controlled substance.

On the Friday before trial, the State also gave notice of an intent to enhance punishment to that for a habitual felon. (CR 45). The case was called for trial Monday, June 15, 2015. On Appellant's objection, the habitual felon notice was quashed. (CR 42). The record does not reflect adverse rulings on other pretrial motions. A jury and alternate juror were selected without disputed challenges for cause or *Batson* challenges. (CR 48, 3 RR 151). Appellant stipulated to a prior felony conviction for possession of a firearm by a felon. (4 RR 12). Through counsel appellant pled not guilty. (2 RR 22).

The jury heard from each of the witnesses as described above. They also heard from officer Steven Fry who was the sponsoring witness for photographs taken of Appellant that day. In the photograph Appellant is not wearing a shirt but does have black pants and marks on his skin which Fry asserted were consistent with shotgun. (4 RR 171).

Officers found a .380 caliber handgun in Appellant's car which matched the caliber of shell casings found in the street. (4 RR 176). Although officers took samples from Appellant to determine if there was

6

residue showing he had fired a gun, those samples were not tested. (4 RR 179-181). Fry admitted that the key witnesses, Johnson, Rush, and King were not truthful when first interviewed. (4 RR 186). Johnson had picked up the shell casings, threw them away, hid the shotgun and left the scene before police arrived. (4 RR 187). This was supported by the testimony of Erin Horan who saw someone climb out of a window, dressed how Johnson had been dressed, and hid a "long gun." (5 RR 6). Fry also disclosed that there was a dispute between Johnson, Rush and Appellant because they accused him of burglarizing their home. (4 RR189).

Fry interviewed the other person identified as being in the car, David Edwards. (4 RR 193). Edwards did not testify at trial because he had been charged in connection with the event (4 RR 193) and would have asserted his Fifth Amendment privilege. (5 RR 24). Through cross examination Appellant elicited from Fry that he "determined" Edwards was in the front passenger seat when the shots were fired. (4 RR 195, 200). Appellant elicited that Edwards admitted to firing from the front window. (4 RR 200). Fry determined that Appellant was in the rear seat (4 RR 199), that Appellant dropped the .380 handgun found in the front seat. (4 RR 195). Fry testified without objection that Johnson told him Appellant had a silver

7

gun when he got out of the car and ran. (4 RR 195-96). This was, of course, in conflict with Johnson's trial testimony.

Fry was also called as a defense witness, Appellant solicited from Fry that Edwards had said he fired a gun and that Appellant also had a gun. (5 RR 16-17). Appellant did not testify in the first phase of trial. (5 RR 32).

There were no challenges to the jury charge. (5 RR 37; CR 27). It did not contain any lesser-included offenses. The jury found Appellant guilty as charged (CR 36) and made a deadly weapon finding. (5 RR 87; CR 37). Because punishment was to be assessed by the Court, the jury was discharged.

Before the punishment phase a juror disclosed to the trial judge that another juror made a statement about knowing "all these people." (6 RR 5). The record was not further developed on the extent of her knowledge.

During the punishment hearing the State presented evidence without objection that he was a "known gang member." (6 RR 15-27). The State presented evidence of eleven prior convictions. (6 RR 36-50; Ex. 59-69). The defense presented no evidence at the punishment phase. (6 RR 53-54). On June 18, 2015 the trial court assessed punishment at 20 years confinement. (CR 59). The court certified Appellant's right of appeal (CR

6) and Appellant timely perfected appeal (CR 54). The court signed a judgment *nunc pro tunc* on July 10, 2015. (CR 19).

## SUMMARY OF THE ARGUMENT

The record fails to show a meritorious ground to support the appeal. Appellant's appointed counsel seeks to withdraw and presents this brief in support of his motion to withdraw. This brief discusses some of the issues examined to determine the appeal is not meritorious.

## ARGUMENT

### *Potential Issue 1: Was the evidence legally sufficient to support Appellant's conviction?*

*Applicable Law*

The standard by which a court must review the legal sufficiency of the evidence is well established and need not be recited at length here. It is sufficient to note a reviewing court must determine whether, after viewing all the evidence in the light most favorable to the finding of guilt, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jones v. State*, 944 S.W.2d 642, 647

(Tex.Crim.App. 1996). Review of the evidence in the light most favorable to the finding does *not* mean an appellate court considers only that evidence which supports the verdict. *Evans v. State*, 202 S.W.3d 158, 165 n.27 (Tex.Crim.App. 2006). Even if a trial court erred in admitting evidence, that evidence may be considered in evaluating sufficiency. *Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim.App. 2004). As the exclusive judge of credibility, a jury may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986); *McCray v. State*, 861 S.W.2d 405, 407 (Tex.App.--Dallas 1993, no pet.). Introduction of conflicting evidence does not render evidence of guilt insufficient. *Matchett v. State*, 941 S.W.2d 922 (Tex.Crim.App. 1996).

To support a conviction, the jury must unanimously agree on a single criminal act. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App. 2005). *See also*, Tex. Const. art. V § 13. The unanimity requirement is intended to give effect to the standard of proof of beyond a reasonable doubt. *See United States v. Gipson*, 553 F.2d 453, 457 n. 7 (5th Cir. 1977). Jurors need not agree on the specific manner in which the offense was committed, only the same criminal act. *Huffman v. State*, 267 S.W.3d 902 (Tex.Crim.App. 2008).

Sufficiency is measured against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge for the case would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* at 239-40. Circumstantial evidence must be reviewed with the same scrutiny as other evidence of an offense. *Laster v. State*, 275 S.W.3d 512, 520 (Tex.Crim.App. 2009). While a factfinder may make reasonable inferences from the evidence, *Jackson, supra*, an inference upon another inference will not support a jury finding. *Williamson v. State*, 156 Tex.Crim. 520, 244 S.W.2d 202, 204 (1951).

The elements of the offense required the State to establish 1) appellant had been convicted of a felony, 2) he was in possession of a firearm 3) before the fifth anniversary of release from confinement or parole. Tex. Pen. Code § 46.04(a).

*Application*

Appellant stipulated to his prior felony conviction and that it occurred in 2010. (4 RR 12). There is no dispute that the date of the event alleged in

11

the indictment was less than five years from that felony conviction. (CR 5). There was no dispute that a firearm was present. Several witnesses including Johnson (4 RR 78, 80, 87), Rush (4 RR 116), King (4 RR 149), and Horan (4 RR 52) testified to seeing at least one handgun. The disputed issue was whether Appellant was in possession of a firearm.

There were significant conflicts in the evidence concerning whether Appellant was seated in the front or back of the Buick automobile. Johnson and Rush testified he was in the front seat and fired the gun (4 RR 78, 80, 87-88, 116) while King testified Appellant was in the rear seat (4 RR 146, 150, 153). The jury also had before it the statements of David Edwards through detective Fry. There was also a difference in the evidence concerning whether Appellant left the scene with a gun or had dropped it. (4 RR 82, 90).

To support a finding of guilt beyond a reasonable doubt it was not necessary that the jury agree on precisely when Appellant possessed a firearm, as long as it was on the date alleged in the indictment. As the exclusive judge of credibility, the testimony of Johnson, Rush and King that they saw Appellant possess a handgun on the date alleged was sufficient to support a finding of guilt beyond a reasonable doubt.

The jury also had before it the hearsay statements of Edwards, who was identified as being in the car, that Appellant possessed a handgun. (4 RR 195-96; 5 RR 16-17). The jury could consider, and thus this court must consider, this evidence even if it was improperly introduced. *Moff*, 131 S.W.3d at 488.

Under the applicable standards, the evidence was legally sufficient to support a finding of each element beyond a reasonable doubt.

## *Potential Issue 2: Did the trial court err in overruling Appellant's objection to evidence of extraneous offenses?*

Shortly before trial the State informed defense counsel it intended to present evidence that Appellant was at the home of David Johnson with a gun the day before the date alleged in the indictment. (3 RR 13). Appellant objected to the evidence on the basis there was a risk some members of the jury could vote to convict based on that evidence because the indictment alleged the offense was "on or about" June 23, 2014. (Id.). The State's initial argument was that it would be permissible for some jurors to find Appellant guilty if he possessed a firearm any time before the fifth anniversary of his release. (3 RR 14). Because possession on a different date would be a different criminal act, admission of the evidence on that

basis would be error. *Ngo*, 175 S.W.3d at 745. The trial court also denied Appellant's request to strike the "on or about" language. (3 RR 16).

During trial, Appellant objected to testimony of a drug sale between Appellant and Johnson's brother (4 RR 72) and the presence of a gun on June 22nd. (4 RR 74). In describing the anticipated testimony, counsel for the State expected Johnson to testify to the possession of a gun by Appellant on June 22nd. (4 RR 74). The State argued the events were not extraneous because it was the genesis of the dispute on both June 22nd and 23rd and was part of the context of the offense. (4 RR 73). It also argued the evidence was relevant to motive and intent. (4 RR 75). Appellant's objection was overruled as was his objection that the probative value was outweighed by the danger of unfair prejudice. (4 RR 74, 75). There was no separate objection on the lack of notice of that extraneous offense.

Following those objections, Johnson did *not* testify to Appellant having a gun on the 22nd. (4 RR 75-84). Consequently, even if the trial court's ruling was error, it did not result in reversible error. Under the standard for evaluating harm from non-constitutional errors, such errors must be disregarded unless they affect a substantial right. See, Tex. R. App. P. 44.2. A substantial right is a right that is "affected when the error had a substantial and injurious effect or influence in determining the *jury's*

14

verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). This issue presents no meritorious basis to support an appeal.

***Potential Issue 3: Did the trial court err in permitting hearsay statements of a codefendant who was not subject to cross-examination?***
*Relevant Facts*

The trial court admitted testimony of Detective Fry concerning statements made by witness David Edwards. Some of those statements supported the essential elements of the offense, including that Appellant possessed a firearm. (5 RR 16-17). Edwards was not called to testify because it was undisputed he would assert his fifth amendment privilege. (5 RR 24). The key portions of that testimony was elicited by Appellant's counsel on cross examination of Fry, and on direct examination when called as a defense witness. (5 RR 16-17).

Although the testimony was clearly hearsay, it was solicited through questioning by defense counsel. Any objection to the testimony on the basis of hearsay or denial of the right of confrontation were waived. See, Tex. R. App. P. 33.1 (preservation of complaint on appeal requires timely objection). Because any complaints concerning this testimony have not been preserved for appeal.

***Potential Issue 4: Is Appellant entitled to a new trial due to juror misconduct?***

*Facts.*

During jury selection the members of the panel was asked if they recognized the names of the witnesses. (3 RR 82). Two recognized the name David Johnson. Two others knew officers listed as a witness. (3 RR 83). One was unidentified and knew officer Aguilar.

After the jury was discharged, one of the jurors informed the trial judge that, after reaching a verdict, juror Gloria Byrtle had made a statement about "knowing all these people." (6 RR 5-6). There was no further discussion or request on the matter.

*Applicable Law.*

The failure of a juror to accurately answer questions during *voir dire* can deprive a defendant of due process and establish entitlement to a new trial. Tex.R.App.P. 21.3(d); *Salazar v. State*, 562 S.W.2d 480 (Tex.Crim.App. 1978). When a juror realizes they know a witness or victim during trial, there is no misconduct. *Uranga v. State*, 247 S.W.3d 375, 377 (Tex. App.--Texarkana 2008) aff'd, 330 S.W.3d 301 (Tex.Crim.App. 2010).

To raise an issue of juror misconduct on appeal, the record must be sufficiently developed to establish the misconduct. That must be done

17

through a motion for new trial and evidentiary hearing. *Trout v. State*, 702 S.W.2d 618, 620 (Tex.Crim.App. 1985).

*Application.*

No motion for new trial was filed and the record is not sufficiently developed to support a claim for juror misconduct. Because the trial court was not asked to grant a new trial on that basis, it could not commit error in failing to grant a new trial. Tex. R. App. P. 33.1. Appellant's remedy to develop the record on juror misconduct would be through a writ of habeas corpus. *See, e.g. Parrish v. State*, 38 S.W.3d 831, 833 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). The record does not support presentation of this issue as a meritorious ground on appeal.

## PRAYER FOR RELIEF

Movant prays this court review the record, grant movant's motion to withdraw and, if an arguable ground for appeal is shown in the record, remand for appointment of new counsel. If no arguable ground is shown, affirmance of the trial court's order is required. Tex. R. App. P. 44.1.

Respectfully submitted:

\_\_/s/\_\_Clint F. Sare_____
Clint F. Sare
Texas Bar Num. 788354
P.O. Box 1694

18

Bryan Texas, 77806
(979) 822-1505
cfs@sarelaw.com

**CERTIFICATE OF COMPLIANCE**

**WITH BRIEF LIMITATIONS AND SERVICE**

I certify the foregoing document does not exceed the word count limitation of Rule of Appellate Procedure 9.4(i) based on the computer software word count of 4059 words.

I certify a copy of the foregoing brief was served on Douglas Howell, III counsel for the State by personal service to 300 E. 26th Street Ste. 310, Bryan, TX 77803 on November 20, 2015.

__/s/__Clint F. Sare_____
Clint F. Sare